WILLIAM P. TATEM, COLLECTOR OF CAMDEN, v. JONATHAN P. WRIGHT ET AL.

1. A tax laid upon the agents of foreign insurance companies from other states, doing business within this state, does not conflict with the clause of the federal constitution which guaranties to the citizens of each state the privileges of citizens of the several states.

2. A corporation aggregate is not considered as a *citizen,* or entitled to the privileges of a citizen, except perhaps for the purpose of giving jurisdiction to the federal courts, for which a corporation may be considered a citizen of the state by which it is incorporated.

State of case agreed upon by counsel.

The declaration filed in this case is upon a bond given by the defendant, as agent of a foreign insurance company, under date 23d October, 1847, for $1000, conditioned to comply with the several requisitions of the act entitled, " An act relative to insurance companies," approved April 15, 1846.

" It is agreed, between the attorneys of the above parties, that the sole question for the decision of the court in the above case is, whether the agents of foreign insurance companies, doing business and having offices in this state, are liable to the tax assessed upon them under and by virtue of the act entitled, ' An act relative to insurance companies,' approved April 15, 1846. If the court shall decide that the above act is constitutional, and the agents liable, judgment final shall be entered for the plaintiff, if otherwise, judgment final shall be

entered for the defendants, with leave for either party to bring a writ of error, if disposed so to do.—Feb. 3, 1852."

Argued before the CHIEF JUSTICE, and POTTS and ELMER, Justices, by *A. Whitehead*, for defendants, and *W. L. Dayton*, for plaintiff.

*A. Whitehead*, for defendants, in support of demurrer.

*Rev. Stat.* 1016. The preamble of the act is—" *Whereas*, it is represented to the legislature, that associations or companies of individuals, not resident in this state, nor incorporated by its laws, do nevertheless, by means of agents appointed by them in this state, effect many insurances within the same, against losses by fire and otherwise, thereby securing to themselves all the benefits, without being subject to any of the burthens of insurance companies regularly incorporated by law of this state."

The first section declares, that no person shall act as an agent for any individuals, or associations of individuals, not incorporated by some law of this state, (although incorporated by the law of another state) for the purpose of effecting insurance or contracts of insurance in such foreign and unincorporated companies as aforesaid, except as provided for by the said act.

A supplement to this act was passed in the session of 1850, not essentially changing its provisions with reference to the question to be considered.

This act, taken together, in effect prohibits citizens of the other states, as individuals or associations, or companies of individuals, from transacting in this state the business of insurance against losses by fire or otherwise, except upon payment of a tax upon the premiums or amounts received for the use of the state, while no tax whatever is charged or levied upon the citizens of this state for transacting the same kind of business.

It is respectfully submitted that this law is in contravention of the second section of the fourth article of the constitution of the United States, which declares—" That the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

The business of underwriting or insurance is a lawful business. It is not against the policy of any law of this state. Any individual or individuals, or association or company of individuals, resident in this state, may lawfully enter into contracts of insurance without paying any tax or duty upon the amount of premiums received as the proceeds of the business; and like any other business, it may be transacted by agents appointed for the purpose. "*Qui facit per alium, facit per se.*" The plain object of this law is to prohibit citizens of other states, or persons not residing in this state, from transacting this description of business, except upon payment of an onerous tax; to discriminate between citizens of this state and the citizens of other states; to deny to others the exercise of a privilege common to the citizens of this state.

It is a law levying a discriminating tax upon a lawful business, not different, in respect to its constitutionality, from a law imposing an extraordinary tax upon citizens of other states, who might, by their agents, carry on in this state the business of merchants or manufacturers, or any other business lawful to be done by citizens of this state.

It will be observed that the prohibition is against all individuals, or associations or companies of individuals, residing out of this state, not incorporated by some law of this state, whether incorporated by the law of another state or not; so that no individual or copartnership in New York or Pennsylvania, by their agents in this state, can lawfully, except upon onerous terms, make a contract of insurance against loss by fire or the perils of the sea, or by any other means. In this respect, they are prohibited the exercise of a privilege common to the citizens of this state. As well might a law prohibit the lading or unlading of a ship belonging to a citizen of New York in one of the ports of this state, without the payment of a tax for the use of the state.

We have a law imposing a tax upon hawkers, pedlers, and petty chapmen. Would it be constitutional if it imposed a larger tax upon citizens of other states than upon the citizens of this state for the exercise of the same privilege?

Again, this law prohibits any individuals, or company of

individuals, residing out of this state, and not incorporated by a law of this state, from transacting insurance business, except on payment of the tax named : in other words, citizens of other states, to be qualified to pursue a lawful business in this state, are required to be created a body corporate by a law of this state, a condition not imposed on citizens of this state. And herein citizens of other states are curtailed of their constitutional rights in this state.

It may be said, however, that the law is intended to affect incorporated companies of other states or countries, and not individual citizens of other states. It is a sufficient answer to this objection, that such is not the form of the law. It is all aimed at, and applies, in its very structure and form, to individuals and associations, and companies of individuals not resident in this state. There is no express prohibition of corporations created by the laws of any other state or kingdom. So far as respects this point, it is only in effect declared, that the fact that individuals of other states are incorporated by the law of any other state or kingdom shall not relieve them from the disability imposed by the act. It recognizes corporations of other states as being composed of citizens of such states, and declares that their being incorporated shall not confer on them a capacity which, as separate individuals, they would not have under the law.

But, for the sake of the argument, suppose it be true that the legislature intended only to affect corporations, (a supposition which cannot be made without doing violence to the act) is the law, as against corporations, constitutional ?

A corporation, like a copartnership, is composed of individuals associated in a joint enterprise for their common benefit. It is presumed it will not be questioned that persons associated as partners, would, as citizens, be entitled to all the protection, privileges, and immunities in the several states, with respect to their joint rights, that a single individual citizen would be entitled to; and it seems to me unreasonable to say, that an association of individuals composing a corporation, by being thus associated, forfeit the rights and privileges which belong to them as individual citizens; that the rights and

privileges of the aggregate body are less than those of the separate individuals who compose it. There seems to be no good reason why it should be so held, any more than in the case of a copartnership; but on the contrary, that the courts will take notice that corporations are composed of individual citizens, and take care to protect their constitutional rights.

Judge Story, in his Commentaries, referring to this section of the constitution, says, " It was the intention of the clause to confer on the citizens of each state a general citizenship, and to communicate all the privileges and immunities which the citizens of the same state would be entitled to under the like circumstances."

There is another light in which this subject ought to be viewed. Corporations are held to be persons, and, under this general description, deemed to be included in legislative enactments as well as natural persons. And the Supreme Court of the United States has held that a corporation is capable of being treated, within the meaning of the constitution, as a citizen as well as a person. The question came before that court, whether corporations were to be deemed citizens for the purpose of giving the court jurisdiction, in the case of *The Louisville Railroad Company* v. *Letson, 2 Howard's U. S. Reports* 558; and the Supreme Court there held, " that a corporation· erected by and doing business in a particular state is to be deemed, to all intents and purposes, as a person and an inhabitant of the same state, for the purpose of its incorporation, capable of being treated as a citizen of that state only, as much as a natural person." See also *Angell & Ames on Corporations* (3d ed.) 400, &c.

It may be said that a corporation ought to be confined in its operations to the jurisdiction where it has been created; but it is well settled that a corporation, although it is deemed to dwell and have its being in the place of its creation, its existence is nevertheless recognized in other states and countries, and that it may contract and make agreements, buy and sell, trade and do any business, within the scope of the powers and privileges granted, like natural persons, beyond the jurisdiction

of the state which created it. *Angell & Ames* (3d ed.) 249 ; *Bank of Augusta* v. *Earl*, 13 *Peters* 531. And I take it that this is not now a question of comity in the United States, but a constitutional principle, incapable of being altered by state legislation.

No regularly reported case on this question has come under my notice, but I refer to the note of a recent decision in Kentucky, extracted from a newspaper :

" A law in Kentucky imposes a tax on all insurance companies of other states having agencies in that state, and exempts all such companies as are incorporated under the authority of that state.

" The agent of the Columbia (Ohio) Insurance Company, having an office at Lexington, regarding such a law unconstitutional, refused to pay the tax. The case went to court, and the judge (Buckner) decided against the law, it being in conflict with that provision of the federal constitution which declares that ' the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.' "

I also refer to the opinions of eminent counsel on this same subject, not of course as authority, but as entitled to examination and respectful consideration.

Copy of an opinion given by George Wood, esq. :

" I have examined the act in the *Revised Statutes* 714, 1016. The third section of that act imposes a tax upon any individual, or association not incorporated by the laws of this state, (though incorporated in any other state) of ten per cent. on premiums for effecting insurances. The design of this act was unquestionably to prevent corporations in the sister states from doing the business of insurance in this state, otherwise than by the imposition of onerous restrictions, which should cause them to transact such business to great disadvantage, and prevent them from coming into any competition with New York corporations.

The act of 1837 reduces the tax from ten to two per cent., but the principle is the same.

I think this provision is unconstitutional. It is a tax on business. The legislature, no doubt, have a right to impose such

a tax. They may select such subjects for taxation as they may deem best fitted to bear the burthen.

But I presume it will not be contended that the legislature can make invidious distinctions between individuals or classes in imposing a tax on property in any branch of business. They could not, for instance, enact that merchants who should underwrite should pay such a tax on the amount of their premiums, and that mechanics should be exempt from it, or *vice versa*.

The raising of a tax is the taking of private property·for public use. When a tax is general, every individual taxed receives a just compensation or equivalent in the protection he derives from government. But if invidious distinctions should be drawn in taxation, in reference to the same subjects of taxation, every one must perceive and feel that there is the absence of just compensation. I can perceive no substantial distinction between the attempt in the present case to discriminate between corporations of this state and other states, and a like attempt at discrimination between individuals.

Clearly a state legislature could not impose unequal taxes upon their own citizens and the citizens of other states doing business in such state. They must all, in this respect, stand upon an equal footing.

The same may be said of corporations. The legislature does not prohibit the citizens of Pennsylvania, incorporated under Pennsylvania laws, from doing the business of insurance in this state. When thus engaged, such Pennsylvania corporation is pursuing a lawful calling. In the pursuit of that business, I think they can be subjected only to the same tax as shall be imposed on a New York corporation.

The citizens of a sister state do not lose their constitutional right to the enjoyment of the same privilege with the citizens of this state in transacting a legitimate business here, merely because they are acting in a corporate capacity.

Extract from an opinion of Hon. Daniel Webster:

"It may perhaps be conceded, that since corporations are artificial beings, the creations of state statutes, and not 'citizens,' a state may, if it so pleases, refuse to such corporations,

when created by the law of another state, a right to sue in its courts; but this would be going very far. But to tax business transactions allowed to be conducted in the state, when performed by the citizens of other states, while such transactions untaxed when occurring between those who are citizens of the state itself, always seemed to me against the constitutional provision. Citizens of Pennsylvania or Massachusetts are found in New York engaged in mercantile transactions, either among themselves or with citizens of New York, giving and receiving promissory notes and bills of exchange. Could the legislature of New York lay a *stamp tax* on such bills and notes, no such tax being imposed generally upon all bills and notes?"

Copy of opinion of Chief Justice Jones:

"I have perused the opinions of Mr. Webster and Mr. Wood on the subject to which they relate, and I concur with them in opinion, that a tax upon any lawful business within the state when carried on by citizens of other states, when such transactions are untaxed while carried on by those who are citizens of this state, is unconstitutional; and that the act of the legislature imposing upon individuals or associations, not incorporated by the laws of the state, (though incorporated in any other state) a tax of two per cent. on the amount of premiums for effecting insurance, cannot be constitutional. The right of the legislature to impose such a tax upon such a business operation is not questioned, provided the tax so imposed be general and proportionally equal upon all persons who are engaged in such business transactions. The legislature may, for purposes of revenue, select such subjects for taxation as they may deem most suitable and best calculated to effect the object with the least inconvenience to and pressure upon the community; but they are not warranted in making invidious and injurious distinctions between individuals or classes in the imposition of a tax on property in any branch of business. I can see no just or sufficient ground of discrimination between the case of corporations of this state or of any sister state and that of individuals. A state legislature cannot impose unequal taxes on the citizens of this state and those of other states do-

ing business therein. They must all be placed on the same footing. The same rule appears to me to apply to corporations. A corporation, composed of citizens of a sister state, engaged in the business of insurance in this state, can be subjected to the same tax only as shall be imposed on a corporate body created by the legislature of our own state. The citizens of a sister state do not lose the constitutional right to the same privileges, in their lawful occupations and business pursuits in this state with our own citizens, merely because they are associated and are acting in a corporate capacity."

*W. L. Dayton*, for plaintiff, contra.

It is understood between counsel that the demurrer presents the single question, whether the act entitled " An act relative to insurance companies," passed April 15th, 1845, is constitutional, as applied to this case.

The question upon this law is narrowed down by the fact, that the bond on which suit is brought in this case is given by the agent of a foreign *incorporated company*, not by a mere association of individuals.

The single clause of the constitution of the United States, with which this law is supposed to conflict, is that which secures to the citizens of each state, " like privileges and immunities with the citizens of the several states." The first point, therefore, to be proved by the defendants is, that an insurance company incorporated by the laws of the state of Connecticut is citizen of that state within the meaning of the constitution, It is not denied that, for the purposes of *jurisdiction*, corporations have been held " *quasi citizens*," and that in many cases the word person has been held to include corporations, they being in law artificial persons.

But the word " *citizens*," as used in the clause of the constitution, is peculiar ; it was evidently intended to confer on the citizens of each state a general right of citizenship in the other states. 3 *Story's Com.* 475.

But it can hardly be pretended such general right *could* be conferred on a corporation or on an artificial person. Citizenship, in the sense intended, applies to natural persons only.

The Supreme Court of the United States, in the case of the *Bank of U. S.* v. *Deveaux et al.*, 5 *Cranch* 6, held expressly, that a corporation, as such, was not a citizen within the constitution, and no well considered case can, I think, be found to the contrary. 3 *Story*, c. 566, § 168. A corporation has no legal existence outside of the sovereignty which creates it. It exists by virtue of municipal law, and such law operates within the jurisdiction of the law making power only ; a corporation of Connecticut is allowed to do business and make contracts within another sovereignty, but that is only from the *comity* of states or nations, and not from any absolute right. It is a mere privilege founded on an implied assent, which assent may, by special provision, be on terms or absolutely withheld, at the option of the legislative power. As soon as this is done, the right or privilege founded on comity is gone, and the corporation stands on its legal rights only, and these are within, and not without the territorial limits of the power that created it. These principles are settled in *The Bank of Augusta* v. *Earl*, 13 *Peters* 586, and in *Runyon* v. *Lessees of Costar et al.*, 14 *Peters* 122. In the latter case, the question was as to the right of a foreign corporation to hold lands in Pennsylvania. The court held that it must depend on the assent, expressed or implied, of Pennsylvania. If the corporation were a citizen in the eye of the law, it is manifest the court could not have so held; the right would have been secured under the constitution.

In the former case (13 *Peters*) Chief Justice Taney expressly repudiates the idea, that the right of a corporation within a foreign jurisdiction extends to matters of contract. If it were otherwise, it is manifest a state would be deprived of all control over the *extent* of chartered powers to be exercised within it. If a state may shut out foreign corporations altogether from making contracts *a fortiori*, she may admit them to do so *upon terms ;* the major includes the minor propostion.

This right of distinguishing, even between citizens, is not unfrequently exercised in our courts. In all matters of guardianship, trust, and so forth, whether of persons or property,

Tatem v. Wright et al.

the judiciary constantly takes care that such trust does not pass into hands beyond its jurisdiction.

But again, the pretence that this law (which levies a tax on foreign corporations) is an unjust discrimination against them, as compared with our own corporations, is not true in point of fact. To make it true in fact, it should appear that both do business under the same *circumstances and under the like penalties and control.*

Yet it is obvious that our stringent laws against fraudulent and insolvent corporations and our summary remedies cannot touch the foreign corporations at all. Many of our own corporations, doubtless, would gladly compromise by payment of the tax, could they at the same time be relieved from the penalties. The argument of the counsel of the defendants, which would give to every foreign corporation all the business rights which our own corporations and own citizens enjoy, (exempted at the same time, as they are and must be, from many of the responsibilities) would be an unjust discrimination against ourselves.

No case has been cited which holds these laws unconstitutional save one, which the counsel refers to from a newspaper, and *infers* that the law under which the *alleged decision* was made is like our own. These laws exist, I find, in many, if not in most of the states, and the very fact that such cases are wanting is plenary evidence against the alleged unconstitutionality of these laws. The opinion of distinguished counsel, referred to in the brief on behalf of the defendant, might have been quite formidable had the reasons or grounds of opinion not been assigned; but as it is, I submit they are but of little weight. They proceed upon the *assumption* that a corporation is a citizen, in the sense intended in the constitution. That is the very point to be proved : yet not a case is cited, nor even an argument or a plausible reason assigned, to support the position.

I may add in this connection, as an offset to these opinions, that I now have before me the written opinions of Governor Vroom and Ex-Attorney General Browning, in favor of the validity of the New Jersey act.

POTTS, J.   The act relative to insurance companies (*Rev. Stat.* 1016) imposes a special tax of two and a half per cent. upon the gross amount received as premiums for insurance in this state by non-resident individuals or companies not incorporated by the laws of the state.   The reason assigned for passing this act, in the preamble, is, " that associations or companies of individuals, not resident in this state, nor incorporated by its laws, do nevertheless, by means of agents appointed by them in this state, effect many insurances within the same against losses by fire and otherwise, thereby securing to themselves all the *benefits*, without being subject to any of the *burthens* of insurance companies regularly incorporated by law of this state."   The defendants in this case, acting in behalf of a foreign insurance company, resist the payment of this tax, on the ground that the act is a violation of that clause in the constitution of the United States, which provides that " the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

It is admitted that the legislature may impose a tax on any particular kind of *business* carried on in the state, either by non-residents, through their agents, or by their own citizens, by individuals or corporations.   The power to regulate, by the imposition of conditions, limitations, and restrictions upon the exercise of particular kinds of business in the community, is equally clear.   Thus the sale of spirituous liquors, the manufacture of gunpowder, the business of banking, &c., are subjected to stringent regulations, under which, only, are they permitted to be exercised.   The legislature, under the old constitution, allowed or prohibited lotteries at their discretion.   The power to regulate, to impose terms and conditions upon the exercise of a business, necessarily includes the power to prohibit it, unless the conditions are complied with.   The business of insurance, like that of banking, is liable to great abuse.   The legislature, except so far as they are committed by charters granted, may, in their discretion, prohibit or impose any conditions deemed proper upon the exercise of either.   They may therefore impose conditions with which, in the nature of things, it is impossible for non-resident corporations to comply ; it may

Tatem v. Wright et al.

be essential to the protection of our citizens that they should do so. If these propositions are not sound ; if the state legislatures do not possess these general powers ; if their exercise infringes the clause of the constitution of the United States above quoted, then there has been a great deal of unconstitutional legislation by every state in the Union.

It is a foreign corporation which, by its agent, is here complaining that this act is unconstitutional, and the complaint is, that the act *discriminates* between the corporations of this, and the corporations of other states ; that it imposes a tax on the foreign, which is not imposed upon the domestic corporation. But the legislature has seen fit to subject our local corporations to the burthen of very stringent laws, from which foreign corporations are entirely exempt. Can it be successfully contended that the legislature had not a right to say that those stringent provisions were necessary for the safety of the community ? And if they had a right to say so, it follows that they had a right to prohibit all corporations, which were not in a condition to be subjected to them, from engaging in the business in this state. May they not, then, permit upon terms, what they might prohibit altogether ? Admitting, for the present, that for the purposes of this case, corporations are to be considered as " citizens " within the meaning of the constitution, and that the corporation represented by the defendants is entitled to " all the privileges and immunities " of corporations of this state, the inquiry remains, what are the privileges and immunities enjoyed by insurance companies in this state ? They may be embraced in this—the privilege of doing the business of insurance, and immunity from this special tax, but subject to the provisions, liabilities and penalties of the several acts relative to incorporated companies. Under these regulations, alone, do we authorize our own companies to engage in this business. But to these regulations foreign corporations are not, and cannot be subjected ; and therefore to permit them to engage in the business in this state, would be not to allow them the *same* privileges and immunities as are enjoyed by our own insurance companies, but to allow them all the privileges, and *much larger* immunities than we allow our own.

Upon no fair construction are we required to do this. As foreign corporations are not within the reach of those regulations which we deem essential to the safe exercise of the business of insurance here, they may be excluded altogether, and they cannot complain if, instead of excluding, we admit them upon the payment of a reasonable tax upon their business.

But there is another, and still more conclusive answer to the defendants' case. Corporations are not *citizens* within the meaning of 'the clause referred to. The second section of the third article of the constitution of the United States provides that the judicial power shall extend, among other cases, to controversies between *citizens* of different states; and the question, whether a corporation could be considered a citizen, even for the purpose of giving jurisdiction to the federal courts, came first before the Supreme Court of the United States in the case of *The Hope Insurance Company* v. *Boardman et al.*, and *The Bank of the United States* v. *Deveaux et al.*, 5 *Cranch* 57, 61. The first was an action brought in the Circuit Court for the district of Rhode Island. The plaintiffs were described, in the declaration, as " citizens of Massachusetts," and the defendants as " The Hope Insurance Company, a company legally incorporated by the legislature of Rhode Island, &c., and established in Providence, in said district." There was judgment for the plaintiffs in the circuit, and a writ of error to the Supreme Court, where it was contended, for the insurance company, that a corporation aggregate could not be a citizen of any state, and therefore that it did not appear on the face of the proceedings that the court had jurisdiction. Mr. *Adams*, who argued for the defendant in error, admitted that the term " citizen " could not with propriety be applied to a corporation aggregate; that it could only be a citizen by intendment of law : he said, " it may be a citizen *quoad hoc, i. e.* in the sense in which the term citizen is used in *that part of the constitution which speaks of the jurisdiction of the judicial power of the United States*. The term is indeterminate in its signification ; it has a different meaning in different parts of the constitution. Where it says, ' the citizens of each state shall be entitled to all privileges and immu-

nities of citizens in the several states,' the term citizen *has a different meaning* from that in which it is used in describing the jurisdiction of the court." Chief Justice Marshall, in delivering the opinion of the court in both cases, said, "the invisible, intangible, and artificial being, that mere legal entity, a corporation aggregate, is certainly *not* a citizen, and consequently cannot sue or be sued in the courts of the United States, unless the rights of the *members* in this respect can be exercised in their corporate name." And the court held, in both cases, that a corporation aggregate cannot, in its corporate capacity, be a citizen; though if it were composed of citizens of one state, it might sue a citizen of another state in the circuit courts. In *The Bank of Augusta* v. *Earle,* 13 *Peters* 519, these cases were approved, but the court held that, "by the *comity* of nations and between the states, the corporations of one state are permitted to make *contracts* in another;" and that "the comity thus extended to other nations is no impeachment of sovereignty; it is the voluntary act of the nations by which it is offered, and is *inadmissible where contrary to its policy or prejudicial to its interests.*" This case is, therefore, equally decisive with the former against the proposition sought to be maintained by the defendants; for if a foreign corporation can only make contracts in this state by mere comity, and this comity is inadmissible where it is contrary to our policy to admit it, there can be no pretence that it stands, in this respect, clothed with the rights of a *citizen* of another state. The Supreme Court of the United States, subsequently, in the case of *The Louisville Railroad Company* v. *Letson,* 2 *Howard* 497, so far modified the doctrine of *The Bank of the United States* v. *Deveaux* as to hold that a corporation aggregate, *for the purpose of suing and being sued,* might be deemed a citizen without regard to the particular residence of its members; but in all other respects approved the preceding cases.

So far, then, as we are referred to reliable authorities, the case is with the plaintiff. If the construction contended for by the defendant is correct, it is at least remarkable that no well authenticated decision can be produced to support it. The le-

gislation of many of the states, through a long course of years, has presented opportunities for raising the question. Laws discriminating to some extent, at least, between foreign and domestic corporations have been common. Some states not only impose a special tax upon corporations of other states doing business within their limits, but exact of them oppressive conditions. Pennsylvania now allows privileges to her own banking corporations which she refuses to those of other states, and prohibits foreign corporations from holding real estate within her jurisdiction. These and many other laws now existing, and which have long existed, are unconstitutional, if the act here complained of is so.

The demurrer must be overruled, and judgment for plaintiff.

ELMER, J. The only question in this case is, whether the act of the legislature of this state, entitled "An act relative to insurance companies," (*Rev. Stat.* 1016) is repugnant to that clause of the constitution of the United States which declares "that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." The act prescribes, in substance, that no person shall act as an agent for any individuals, or associations of individuals, resident out of this state, and not incorporated by some law of this state, until he has given bond to the collector of the county within which he may reside, that he will comply with the requisitions of the act, the most important of which is that he will pay a tax upon the premiums he receives. No such tax is imposed by that, or any other law, upon insurance companies within the state or incorporated by its laws.

That the privileges and immunities of the citizen, embraced in this clause of the constitution, comprehend an exemption from higher taxes or impositions than are paid by other citizens of the state, may be safely assumed. It was so held in the case of *Corfield* v. *Coryell*, 4 *Wash. C. Rep.* 371. Conceding also, for the purposes of this case, what is perhaps more questionable, that a tax laid upon the agent of citizens of another state, and equally affecting agents who are citizens

of this state with those who happen to be citizens of other states, inasmuch as it affects the business of the principals, and indirectly falls on them, comes within this provision, it remains to inquire whether an incorporated company is a citizen within its purport. The association for which the agent acted whose bond is now prosecuted, and upon which the tax is alleged to fall, is a company incorporated in the state of Connecticut, and not incorporated or in any way recognized by any law of this state. In the case of *The Louisville Railroad Company* v. *Letson,* 2 *How.* 297, it was decided by the Supreme Court of the United States, that for all the purposes of suing and being sued, a corporation created by and doing business in a particular state, is substantially a citizen of the state which created it, within the meaning of the constitution and law conferring jurisdiction on the courts of the United States in cases between citizens of different states. This decision, however, is expressly confined, and the reasoning upon which it is supported is applicable only to the case of citizenship for the purposes of bringing suit. In the prior case of *Bank of Augusta* v. *Earle* (13 *Peters* 586), Chief Justice Taney, in giving the opinion of the court, expressly denies that a corporation is a citizen within the clause in question. To hold this, he forcibly remarks, would be to deprive every state of all control over the extent of corporate franchises proper to be granted in the state, and corporations would be chartered in one state, to carry on their operations in another.

A citizen, properly speaking, is a human being inhabiting and having certain rights in some city or district. A person who is a citizen of Connecticut, or of any other state of the Union, is for many purposes a citizen of New Jersey and of all the other states, and is entitled to all such privileges and immunities, coming within the purview of the constitution, as the citizens of those states, permanently resident therein, are entitled to. The privileges and immunities intended to be secured by the constitution are personal privileges, and in the language of Judge Washington, in the case of *Corfield* v. *Coryell,* "are those which are in their nature fundamental, which belong of right to the citizens of all free governments,

and which have at all times been enjoyed by the citizens of the several states which compose this Union, from the period of becoming free, independent, and sovereign." In the very nature of things, the citizen referred to is a natural person, a human being having rights essential to his character as a member of a free government, and not a mere artificial person, the creature of a special charter, having no rights but such as are thereby granted. A corporation having a right to sue like a natural person, may well be considered an inhabitant or citizen of a particular state, for the purpose of bringing suit, when the general purpose and spirit of the law so requires. But it is otherwise when the general purpose and spirit of the law, so far from requiring such a construction, require the contrary.

An individual citizen possesses powers of locomotion, and has rights which are so essential as to make it highly desirable that they should be uniform throughout the Union, and which, in order to secure and perpetuate mutual friendship and intercourse among the people of the different states, were with great propriety placed under the protection of the federal constitution. No such reason exists in the case of a corporation. As was said by Justice Thompson, who delivered the opinion of the Supreme Court of the United States in the case of *Runyan* v. *Costar* (14 *Peters* 129), a corporation must dwell in the place of its creation, and cannot migrate to another sovereignty. Other states recognise its existence and general powers, and by comity usually permit it to make contracts, and enforce them by legal remedies within their sovereignty, as if it was a natural person. But such contracts and remedies depend for their validity upon the laws of the state where made or used, and are not valid or to be enforced there without its express or implied sanction. Having the power to give, the state has the power to withhold such sanction; a power so essential to its well being that no court can venture to control it by construction, without a positive provision plainly designed for that object. If, then, the state can altogether prohibit a corporation created by one of the other states from exercising its powers within its limits, it may, of course, regulate or tax the exercise of such powers at its discretion. Having

no right to come there, such a corporation, if it desires to do so, claims a boon, and must submit to whatever burthens, may be imposed.

It is undoubtedly true that all corporations are composed of natural persons, and such persons are citizens. But it is the legal entity, the artificial being created by the charter, which has appointed the agent and which pays the tax out of its corporate funds. The privilege and immunity of being exempt from any other taxes than such as are imposed on the corporations or citizens of this state, is claimed on behalf of the corporation as such, and not in behalf of the individual stockholders. The business transacted by the agent in this state is the business of the corporation. And although the several stockholders are interested in that business, and their profits may be affected by the taxes imposed, yet inasmuch as they choose to transact it through the medium of an incorporated name, having no personal character or rights, and not properly within the designation of a citizen, they must take their charter with all the disabilities properly belonging to it, one of which is, that an incorporation has no right to go beyond the limits of the sovereignty which created it, and if it does, must submit to such terms as other sovereignties see fit to impose. In my opinion the demurrer must be overruled, and judgment rendered for the plaintiff.

The CHIEF JUSTICE concurred.

Judgment for plaintiff.

CITED in *State* v. *Newark*, 1 *Dutch.* 317 ; *State* v. *Haight*, 6 *Vr.* 283.